UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MULHALL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant. | Case No. 16-cv-01841-DMR<br><br>**ORDER RE DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 38 |

Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") moves the court to dismiss Plaintiff Robert Mulhall's ("Plaintiff") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Motion to Dismiss ("MTD") [Docket No. 38]. Having considered the parties submissions as well as oral argument, and for the reasons stated below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall file his Third Amended Complaint by March 27, 2017.

## I.   FACTUAL BACKGROUND

In this action, Plaintiff seeks to recover loan payments made to Defendant from March 2013 to December 2015 because, according to Plaintiff, there was no valid loan on his property during that time. The following facts are based on the complaint, the exhibits attached to the complaint, and judicially noticeable documents.

In 1992, Plaintiff purchased property located at 848 Arguello Boulevard, Pacifica, California (the "Property"). SAC [Docket No. 35] at ¶ 7. In August 2007, Plaintiff refinanced a loan on the Property in the amount of $536,000.00 and executed a Promissory Note and Deed of Trust, which Defendant assumed. *Id.* In January 2009, Plaintiff contacted Defendant about a loan modification. *Id.* at ¶ 8. Defendant informed Plaintiff that he would need to miss three loan payments to qualify for a loan modification. *Id.* Taking this advice, Plaintiff missed three loan

payments and then applied for a loan modification. *Id.* However, because Plaintiff failed to pay his monthly mortgage payments, ETS Services LLC ("ETS"), acting as trustee, recorded a Notice of Default with the San Mateo County Recorder on behalf of Defendant on June 18, 2009. *Id*. at ¶ 9. On September 18, 2009, ETS recorded a Notice of Trustee's Sale on behalf of Defendant. *Id.* at ¶ 10. On December 10, 2009, ETS sold the Property at a Trustee's Sale to Defendant for $460,000.00, and recorded a Trustee's Deed Upon Sale ("TDUS") conveying all right, title and interest in the Property to Defendant. *Id.* at ¶ 11.

Plaintiff did not learn that the Property had been sold until he called Defendant in January 2010 to discuss a 1099-C form he had received which stated that Defendant had cancelled or written off approximately $140,000.00 of Plaintiff's debt. *Id.* at ¶ 12. During the call, Defendant told Plaintiff that the sale had been in error because Plaintiff was eligible for a loan modification. Defendant represented to Plaintiff that the sale would be rescinded, and that Defendant would restore title to him and send him a loan modification. *Id.* However, unbeknownst to Plaintiff, Defendant did not rescind the TDUS at that time. *Id.* at ¶ 18. In fact, Defendant did not rescind the TDUS until June 2016, after Plaintiff filed this lawsuit.

In March 2010, Defendant sent Plaintiff a loan modification, showing Plaintiff's principal balance as $516,959.66 and providing a new monthly payment amount. *Id.* at ¶ 13. Defendant then began sending monthly billing statements to Plaintiff, which Plaintiff paid. *Id.* at ¶ 14.

In November 2015, Plaintiff received a "suspicious letter" from Defendant, and thereafter discovered that Defendant had not rescinded the TDUS. As such, Plaintiff learned that Defendant, not Plaintiff, had been the owner of the Property since December 2009. *Id.* at ¶ 16. At the hearing, Plaintiff's counsel confirmed that the "suspicious letter" is the letter described in paragraph 16 of the First Amended Complaint, which states that Plaintiff's loan number would be changing. *See* FAC [Docket No. 18] at ¶ 16. According to the FAC, this letter struck Plaintiff as "odd," at which point he realized that he had never seen the rescission of the TDUS, and went to the County Recorder and learned that TDUS was not rescinded. *Id*.

Upon discovering that Defendant had not rescinded the TDUS, Plaintiff sent a letter to Defendant requesting an in-person meeting with one of Defendant's representatives. *Id.* at ¶ 17.

2

Plaintiff's request was denied. *Id.* Plaintiff thereafter stopped making payments on his loan, believing that he did not have title to the Property. *Id.*

On March 8, 2016, Plaintiff commenced this action in California state court, alleging claims for conversion and quiet title. *See* State Court Complaint (Ex. A to Not. of Removal) [Docket No.1]. Defendant removed the action on April 8, 2016. *See* Not. of Removal [Docket No.1]. Defendant moved to dismiss the original complaint, which the court denied as moot after Plaintiff filed a First Amended Complaint ("FAC"). In his FAC, Plaintiff alleged four claims: 1) quiet title, 2) conversion, 3) intentional misrepresentation, and 4) negligent misrepresentation. *See* FAC [Docket No.18]. Defendant moved to dismiss the FAC. The court granted Defendant's motion, dismissed the quiet title with prejudice, but dismissed the conversion, intentional misrepresentation, and negligent misrepresentation claims with leave to amend. *See* July 28, 2016 Minute Order [Docket No. 34].

On August 11, 2016, Plaintiff filed his SAC, alleging claims for conversion and negligent misrepresentation. *See* SAC [Docket No. 35]. Defendant now moves to dismiss both claims on the grounds that they are either moot or time-barred by the applicable three-year statute of limitations. Defendant also argues that Plaintiff's negligent misrepresentation claim does not satisfy Rule 9's pleading requirements.

**II.     LEGAL STANDARDS**

**A.     Rule 12(b)(1)**

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted). When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

3

1  (9th Cir. 2004). By contrast, a factual attack disputes "the truth of the allegations that, by

2  themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at

3  1039.

4  Here, Defendant facially attacks Plaintiff's claims for conversion and negligent

5  misrepresentation pursuant to Rule 12(b)(1), by arguing that they are moot as a result of the

6  rescission of the TDUS. When evaluating a facial attack on the court's subject matter jurisdiction,

7  the court "must accept all of the plaintiff's factual allegations as true." *Dreier v. United States*,

8  106 F.3d 844, 847 (9th Cir. 1996) (citations and quotation marks omitted).

**B.     Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–200 (9th Cir. 2003). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted).

When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A claim has facial plausibility when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

For purposes of Rule 12(b)(6) review, the court reviews documents incorporated into the complaint, as well as judicially noticeable material. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

United States District Court
Northern District of California

551 U.S. 308, 322 (2007); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by reference); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1006, 1016 n.9 (9th Cir. 2012) (judicial notice).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III.  REQUEST FOR JUDICIAL NOTICE

The court first considers Defendant's unopposed request for judicial notice. The court takes judicial notice of the Notice of Rescission of Trustee's Deed Upon Sale dated May 25, 2016 and recorded in the official records of the San Mateo County Recorder's Office on June 6, 2016. Def.'s RJN [Docket No. 39] Ex. 1. Under Federal Rule of Evidence 201(b), publicly-recorded real estate instruments and notices are the proper subject of judicial notice, unless their authenticity is subject to reasonable dispute. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004).

### IV.  ANALYSIS

Defendant moves to dismiss Plaintiff's claims on the ground that they are moot because the rescission of the TDUS restored Plaintiff to his pre-foreclosure position as the title owner. According to Defendant, the rescission had the effect of returning matters to the status quo immediately prior to the sale, which means that title was restored to Plaintiff as if the sale had never happened. Defendant argues that as the title owner, Plaintiff was obligated to make loan payments under the new loan modification agreement; therefore, Defendant did not wrongfully convert Plaintiff's loan payments or negligently misrepresent that there was a valid loan.

**A. Rescission**

Under of California law, it is black letter law that rescission "restores the parties to their

former position."[1]  1 Witkin, Summary of California law, 10th Contracts § 926 (2005); *see also Runyan v. Pac. Air Indus., Inc.*, 2 Cal. 3d 304, 316, 466 P.2d 682, 691 (1970) ("It is the purpose of rescission to restore both parties to their former position(s) as far as possible . . . .") (citation and internal quotation marks omitted).  A rescission "extinguishes a contract, rendering it void *ab initio*, as if it never existed." *DuBeck v. Cal. Physicians' Serv.*, 234 Cal. App. 4th 1254, 1264 Cal. Rptr. 3d 743, 750 (2015) (emphasis in original); *Sharabianlou v. Karp*, 181 Cal. App. 4th 1133, 1144–45, 105 Cal. Rptr. 3d 300, 309–10 (2010), *as modified on denial of reh'g* (Mar. 3, 2010) ( The"'[r]elief given in [a] rescission case[ ] . . . puts the rescinding party in the status quo ante, returning him to his economic position before he entered the contract.'") (quoting *Runyan*, 2 Cal. 3d at 316, n.15) (emphasis in original).

In addition to the common law of rescission, a California statute specifically addresses the rescission of trustee's deeds.  California Civil Code section 1058.5(b) provides that rescission of a trustee's deed results in a return to the status quo prior to the recordation of the trustee's deed upon sale:

> ***Where a trustee's deed is invalidated by a pending bankruptcy or otherwise***, ***recordation of a notice of rescission of the trustee's deed***, which notice properly identifies the deed of trust, the identification numbers used by the recorder or the books and pages at which the trustee's deed and deed of trust are recorded, the names of all trustors and beneficiaries, the location of the property subject to the deed of trust, and the reason for rescission, ***shall restore the condition of record title to the real property described in the trustee's deed and the existence and priority of all lienholders to the status quo prior to the recordation of the trustee's deed upon sale***. Only the trustee or beneficiary who caused the trustee's deed to be recorded, or his or her successor in interest, may record a notice of rescission.

Cal. Civ. Code § 1058.5 (emphasis added); *see*, *e.g.*, *Champlaie v. BAC Home Loans Serv., LP*, 706 F. Supp. 2d 1029, 1051 (E.D. Cal. Oct. 22, 2009) ("Rescission of a trustee's deed 'restore[s] the condition of record title to the real property described in the trustee's deed and the existence and priority of all lienholders to the status quo prior to the recordation of the trustee's deed upon

---

[1] California law applies as Defendant removed solely on the basis of diversity jurisdiction, *see* Notice of Removal [Docket No. 1], at 1-4, and Plaintiff's original complaint pled only California state law claims.

sale.'") (quoting Cal. Civ. Code § 1058.5(b)).

While a number of cases discuss the meaning of a rescission, few cases actually explain the effect of a rescission. *In re Dawson*, 390 F.3d 1139 (9th Cir. 2004) is one such case. The facts and procedural posture of *Dawson* are somewhat convoluted, so the court will recite only those facts relevant to its analysis. In *Dawson*, a bank held a deed of trust on the subject property and issued a notice of default due to the plaintiffs' failure to make mortgage payments. The bank eventually sold the property through a foreclosure sale, but rescinded the sale approximately six months later. The homeowners filed two bankruptcy petitions, the second of which is pertinent to this court's discussion. In resolving the second bankruptcy petition and related adversary complaint, the bankruptcy court found that the bank did not violate the automatic bankruptcy stay by engaging in the foreclosure sale. The bankruptcy court awarded the remedy of rescission, and ruled that the homeowners owed the bank the loan payments accrued from the date of the foreclosure sale to the date of the rescission of that sale. The district court affirmed the bankruptcy court's order as to that remedy. *Id*. at 1143-45.

On appeal, the homeowners argued that they were not responsible for making mortgage payments to the bank from the date of the foreclosure sale to the date of the rescission, because the trustee's sale extinguished the bank's note on the property. *Id*. at 1151. The Ninth Circuit rejected the homeowner's argument, explaining the effect of the rescission:

> California rescission law empowers a court to undo a transaction and restore the parties to the status quo ante. That is precisely what the bankruptcy court did here - the court *undid* the foreclosure and thereby placed the parties in the positions they occupied before the February foreclosure.

*Id*. (emphasis in the original). The homeowners also contended that if rescission restored the parties to the status they occupied just before the February foreclosure, they did not owe payments for any month other than February, since those payments were not yet due. *Id*. The Ninth Circuit disagreed, explaining that the homeowners knew they were obligated to make ongoing mortgage payments on their property on the date of the foreclosure sale. *Id*.

The Ninth Circuit's reasoning in *Dawson* applies here. Like the homeowners in *Dawson*,

Plaintiff argues that he was not obligated to make payments on his loan because the TDUS extinguished the Deed of Trust and the Note. *See*, *e.g.*, SAC [Docket No. 35] at ¶ 22 (alleging that Defendant wrongfully acquired interest and principle loan payments from Plaintiff because "Defendant knew, or should have known" that there was no valid Deed of Trust on the Property because the Deed of Trust had been extinguished in the TDUS); ¶ 31 (alleging that Defendant misrepresented there was a valid loan in its monthly billing statements because the "loan was extinguished and Defendant had been paid back in full"). However, as was the case in *Dawson*, title was restored to Plaintiff when Defendant rescinded the TDUS. As the title owner, Plaintiff was obligated to make loan payments under the new loan modification agreement.

Plaintiff's argument in response is far from clear. Instead of distinguishing *Dawson* in any meaningful way, Plaintiff appears to argue that there was no lawful rescission under Section 1058.5 because the foreclosure sale was not invalidated. *See* Opp'n at 5 ("[I]t is clear that unless the sale and the resulting trustee's deed upon sale are invalidated, § 1058.5 does not apply and the parties are not returned to the status quo ante."). In order to reach this conclusion, Plaintiff contends that a foreclosure sale may be invalidated "only if the beneficiary had no right to sell the property." *See* Opp'n at 5. According to Plaintiff, Defendant rescinded the TDUS due to a "servicing error," which cannot invalidate a sale. *Id*. Plaintiff's argument is unpersuasive for several reasons.

To begin with, the court notes that Plaintiff previously conceded that the TDUS was, in fact, rescinded. *See* SAC at ¶ 18. Plaintiff's pleading makes no reference to a claim that the rescission was somehow not valid. Thus, Plaintiff's new argument directly contradicts, or at least undermines, the allegation in his pleading.

Next, despite what Plaintiff argues, Section 1058.5 neither specifies nor limits how a TDUS or its underlying sale is invalidated. Section 1058.5 simply states: "[w]here a trustee's deed is invalidated by a pending bankruptcy or otherwise." Cal. Civ. Code § 1058.5; *see also McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008), *abrogated on other grounds by CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) ("The preeminent canon of statutory interpretation requires [the court] to presume that [the] legislature says in a statute what it means and means in a

1    statute what it says there. Thus, [the] inquiry begins with the statutory text, and ends there as well
2    if the text is unambiguous.").

3          There are a number of other grounds upon which a foreclosure sale can be set aside or
4    invalidated under California law. *See* 4 Witkin, Summary 10th Sec. Trans--Real § 165 (Grounds)
5    (2005) (listing grounds upon which a sale may be set aside including, but not limited to, certain
6    irregularities in the sale, sham bidding, and a seller's failure to disclose material fact about the
7    property). For example, a sale may be set aside due to certain irregularities in the sale such as a
8    deficient notice of default. *Id.*; *see also* 27 Cal. Jur. 3d Deeds of Trust § 322 (A "trustee's sale
9    based on a "deficient notice of default" is invalid as the "requirements for foreclosing by a
10   trustee's sale pursuant to the deed of trust must be strictly complied with."); *Countrywide Home
11   Loans, Inc. v. United States*, No. CV F 02 6405 AWI SMS, 2007 U.S. Dist. LEXIS 1625, at *52
12   (E.D. Cal. Jan. 9, 2007) (discussing section 1058.5(b) and explaining that "[s]tatutorily deficient
13   notice of default and/or notice of the sale is grounds to set aside a sale").

14         Plaintiff cites *Bank of Am., N.A. v. La Jolla Grp. II*, 129 Cal. App. 4th 706, 712, 28 Cal.
15   Rptr. 3d 825, 828 (2005), as modified (June 15, 2005), and *Bisno v. Sax*, 175 Cal. App. 2d 714,
16   724, 346 P.2d 814, 820 (1959), but these cases are limited to their facts. They do not stand for the
17   broad and sweeping proposition advanced by Plaintiff, i.e., that a foreclosure sale may be
18   invalidated only if the seller had no right to sell the property. In *Bank of Am.*, the homeowners
19   defaulted on their loan, so the bank, which was the beneficiary under the deed of trust, instructed
20   the trustee to issue a notice of default against the property. 129 Cal. App. 4th at 709. Meanwhile,
21   the homeowners and the bank entered into an agreement to cure the default and reinstate the loan.
22   *Id.* at 709, 712. However, the bank never informed the trustee that the loan was reinstated, so the
23   foreclosure sale proceeded and the property was sold. *Id.* at 709. The bank then filed an action
24   against the new owner of the property seeking cancellation of the deed of trust. *Id.* at 710. The
25   California Court of Appeal held that the foreclosure sale was invalid because the seller and the
26   buyer had agreed to cure the default prior to the sale and so, the seller "had no right to sell
27   afterward." *Id.* at 712.

28         Similarly, in *Bisno*, the homeowners defaulted on his loan, which prompted issuance of a

United States District Court
Northern District of California

notice of default. 175 Cal. App. 2d at 718. The homeowner filed an action to stop the foreclosure sale and obtained a preliminary injunction conditioned on the plaintiffs' payment of an amount sufficient to cure the default. *Id*. at 720. The plaintiffs paid the required amount. *Id*. at 720. The defendant received the check, but did not cash it. *Id*. Instead, the defendant held on to the check during the trial on the homeowners' action, and returned it after judgment was entered against the plaintiffs and the preliminary injunction was dissolved, stating that the payment was late. *Id*. The property was then sold to a third party. *Id*. at 730. Under these circumstances, the California Court of Appeal held that the foreclosure sale was invalid because the default was cured. *Id*. at 722-724. The homeowners paid the required amount and the defendant did not reject the check, as it could have, but instead held on to it and thus accepted it. *Id*. at 722-23. As the Court of Appeal noted, a "defendant should not be permitted to accept the money tendered in discharge of a defaulted obligation and retain the advantage of collecting that same amount through a foreclosure proceeding or otherwise." *Id*. at 723.

Further, while Plaintiff argues that a clerical error regarding the price of a property does not invalidate a sale, Plaintiff fails to explain why the "servicing error," (a term used by Defendant in its rescission notice), should be treated the same as the clerical error in *6 Angels, Inc. v. Stuart-Wright Mortg., Inc.*, 85 Cal. App. 4th 1279, 102 Cal. Rptr. 2d 711 (2001), cited by Plaintiff. In *6 Angels, Inc.*, the homeowners' property was scheduled to be sold at a trustee's sale because they defaulted on their mortgage. 85 Cal. App. 4th at 1282. The defendant loan servicer intended to set the opening bid on the property at $100,000.00, but through a clerical error, mistakenly instructed the bid to be set at $10,000.00. *Id*. at 1284. The plaintiff tendered a bid of $10,000.01 and bought the property. *Id*. at 1282. Realizing its error, the defendant loan servicer refused to transfer the deed of sale to the plaintiff, contending that the property should have been offered at $100,000.00. *Id*. The plaintiff subsequently filed an action for quiet title. *Id*. The California Court of Appeal held that the clerical error in the price of the property was not the type of procedural irregularity sufficient to set aside a sale. *Id*. at 1284-85.

Unlike the clerical error in *6 Angels, Inc.*, the error here was the failure to provide Plaintiff with timely notice of his approval for a loan modification prior to foreclosure. *See* RJN [Docket

10

No. 39-1] at 2. This error is similar the one in *Champlaie*. In *Champlaie*, the seller rescinded a foreclosure sale because of a "failure to communicate timely [ ] notice of conditions." 706 F. Supp. 2d at 1043. The district court applied section 1058.5(b) to conclude that the rescission of the TDUS did not cancel documents recorded prior to the TDUS. Additionally, although neither party argues this, the error here may have been one that was prohibited by statute. *See* Cal. Civ. Code § 2923.6 (c)(2) (prohibiting bank from "record[ing] a notice of default or notice of sale or conduct a trustee's sale" until the "borrower does not accept an offered first lien loan modification within 14 days of the offer").[2] Thus, far from being a purely administrative error, the "servicing error" here concerned the validity of the sale itself.

In sum, the court finds that pursuant to *Dawson* and California rescission law, title was restored to Plaintiff upon rescission of the TDUS, and placed the parties in the status quo immediately prior to the sale. Plaintiff therefore was obligated to make loan payments under the new loan modification agreement. The court now turns to the question of whether Plaintiff's claims for conversion and negligent misrepresentation claims are moot in light of this finding.

### B. Mootness

The Ninth Circuit has held that "[i]f an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997); *see also Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) ("An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). "A party asserting mootness has a heavy burden." *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 547 (N.D. Cal. 2012); *see also Medici v. JPMorgan Chase Bank, N.A.*, No. 3:11-cv-00959-HA, 2012 WL 929785, at *3 (D. Or. Mar. 16, 2012) (citing *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008)).

In the foreclosure context, courts in this circuit generally have held that claims for wrongful foreclosure are moot when a foreclosure sale is rescinded or cancelled. *See Sutcliffe*, 283 F.R.D. at 547 (explaining that "claims for wrongful foreclosure are likely moot where the

---

[2] The court does not have sufficient facts before it to determine whether this provision of the Homeowner's Bill of Rights applied in this circumstance.

11

foreclosure is cancelled and a loan modification is offered instead"); *Medici*, 2012 WL 929785, at *3 (holding that where foreclosure was rescinded, claims challenging foreclosure were moot); *Flores v. GMAC Mortg., LLC*, No. C 12-794 SI, 2013 WL 2049388, at *4 (N.D. Cal. May 14, 2013) (explaining that "to the extent plaintiff seeks to unwind a foreclosure," these allegations and any claims based on the foreclosure were moot because the sale was rescinded); *Swartz v. Nationstar Mortg., LLC*, No. CV 14-08649 BRO (JCx), 2015 WL 846789, at *6 (C.D. Cal. Feb. 26, 2015) (dismissing plaintiff's wrongful foreclosure claim as moot because plaintiff alleged no claim against defendant for wrongful conduct beyond foreclosure, which was rescinded).

However, "claims that are related to a foreclosure but which are based on alleged wrongful conduct that goes beyond the wrongful foreclosure are not necessarily rendered moot where the foreclosure is vacated." *Sutcliffe*, 283 F.R.D. at 547; *see also Swartz*, 2015 WL 846789, at *6 (explaining that "following rescission of foreclosure proceedings, claims that challenge the foreclosure are moot, whereas other claims such as negligence may not be") (citing *Sutcliffe*).

For example, in *Sutcliffe*, the plaintiffs brought a putative class action against a mortgage lender, alleging that the lender offered illusory trial loan modification programs to borrowers facing foreclosure without the intention of offering the borrowers permanent loan modifications. 283 F.R.D. at 536. The lender moved to dismiss the plaintiffs' unfair competition and breach of contracts claims as moot because it offered the plaintiffs a permanent loan modification, which the plaintiffs accepted. *Id*. at 546. The district court rejected the lender's argument, explaining that the plaintiffs' claims were based on the lender's "alleged unfair and deceptive conduct in connection with the two forbearance offers," and was not based on the wrongful conduct "committed in foreclosure proceedings." *Id*. at 547.

Similarly, in *Medici*, 2012 WL 929785, at *3-4, the district court held that a plaintiff's claim for negligence relating to a defendant's conduct surrounding the foreclosure was not mooted by the rescission of the TDUS. The plaintiff alleged that the lender was negligent in scheduling the foreclosure sale, failing to provide a timely reinstatement accounting, failing to postpone the sale while the plaintiff's loan modification application was being processed, conducting the foreclosure sale after the plaintiff's loan had been reinstated, recording the TDUS, and failing to

1   take any correction actions. *Id.* at *4. The plaintiff also sought monetary damages in the form of
2   loss of equity in her home, loss of home ownership tax benefits, fees or expenses charged by the
3   lender after the home was foreclosed, and attorneys' fees and costs incurred to resolve the dispute
4   prior to litigation. *Id*. The district court held that some of the requested relief was mooted by the
5   rescission of the TDUS, such as the loss of home equity and prospective tax benefits, but other
6   relief was not, such as the bank fees and attorneys' fees incurred during the period the plaintiff
7   was attempting to prevent the foreclosure and regain title. *Id*.

Applying these principles, the court finds that Plaintiff's conversion claim is moot. Plaintiff alleges that Defendant wrongfully converted $70,000.00 of Plaintiff's money, consisting of interest and principal payments.[3]  *See* SAC at ¶ 22. Since the rescission restored Plaintiff to his pre-foreclosure position as the title owner, Plaintiff cannot allege that Defendant wrongfully converted these payments. As the title owner, he was required to make such payments. *See* SAC at ¶¶ 9, 13. Plaintiff also alleges that he is entitled to attorneys' fees and an order repairing his credit. *See* SAC at ¶ 25. Since Plaintiff's allegations are insufficient in setting forth whether these damages relate to acts that are moot, the court also dismisses these damages as moot.

The court notes that it is difficult to conceive of a conversion claim that would not be moot since the essence of Plaintiff's conversion claim is the wrongfully withheld property, i.e., the loan and interest payments. *See Lee v. Hanley*, 61 Cal. 4th 1225, 1240, 354 P.3d 334, 343 (2015) (elements of a conversion claim under California law include "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages") (citation and internal quotation marks omitted). However, it cannot definitively say that amendment would be futile. Therefore, the court grants Plaintiff a final opportunity to amend the conversion claim in a manner consistent with this order. *See Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892–93 (9th Cir. 2010) (explaining that a district court may, in its discretion, deny leave to amend for "repeated failure to cure deficiencies

United States District Court
Northern District of California

---

[3] At the hearing, Plaintiff's counsel repeatedly flip-flopped on the court's question of whether the conversion claim seeks damages in the form of principal and interest payments, or in interest payments alone. Plaintiff finally confirmed that his conversion claim seeks principal and interest payments.

13

by amendments previously allowed[] . . . [and] futility of amendment") (citation and internal quotation marks omitted).

The court also finds that Plaintiff's negligent misrepresentation claim is moot to the extent it seeks to recover Plaintiff's loan payments and the loss of Property. Plaintiff's theory of negligent misrepresentation is that Defendant misrepresented that there was a valid loan in its monthly billing statements in order to induce Plaintiff to make payments to Defendant that he did not owe. *See* SAC at ¶¶ 28-34; *see also* Opp'n to MTD [Docket No. 41] at 8. Additionally, while it appears that the focus of Plaintiff's negligent misrepresentation claim is the recovery of his loan and interest payments, Plaintiff has alleged other types of damages. *See* SAC at ¶ 34 (alleging Plaintiff incurred attorneys' fees, a loss of reputation, destruction of credit, emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression). However, as with Plaintiff's conversion claim, Plaintiff does not sufficiently explain the acts upon which these alleged damages are based. Accordingly, the court dismisses this claim as moot, but will provide a final opportunity for Plaintiff to plead this claim.

## V.     STATUTE OF LIMITATIONS & PLEADING ARGUMENTS

Since the court dismisses Plaintiff's claims as moot, the court need not consider Defendant's arguments that the claims are time-barred, or that Plaintiff's negligent misrepresentation claim fails to satisfy Rule 9's heightened pleading requirements.

## VI.    LEAVE TO AMEND TO ADD NEW NEGLIGENCE CLAIM

In his response to this court's request for supplemental briefing, for the first time, Plaintiff requests leave to amend his complaint to include a claim for negligence based on Defendant's negligent mishandling of his account. The court denies Plaintiff's request without prejudice. Plaintiff must formally move for leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) since he has already amended once as a matter of course pursuant to Rule 15(a)(1)(B). *See* Fed. R. Civ. P. 15(a)(2) (explaining that after a party amends once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave"); *see also* N.D. Cal. Civ. L.R. 10-1 (requiring filing of proposed amended

complaint).

## VII. CONCLUSION

In conclusion, the court grants in part and denies in part Defendant's Motion to Dismiss the SAC.  Plaintiff must file his Third Amended Complaint by March 27, 2017.  The court schedules a Further Case Management Conference for May 17, 2017 at 1:30 p.m.  The parties' updated Joint Case Management Conference Statement is due on May 10, 2017.

**IT IS SO ORDERED.**

Dated: March 13, 2017



Donna M. Ryu
United States Magistrate Judge